Good morning, your honors, opposing counsel. I'm here on behalf of plaintiffs' appellants Christina Romero and Gary Adan Cruz Jr. May I please the court, your honors. We are here today for this panel to reaffirm that a parent has a constitutional right under the 14th Amendment to bring a cause of action against social workers and police officers for the removal of their children in violation of case law as established by Gates, being that no exigent circumstances, no parental consent, and no court order. Let me ask, the mystery of this case to me is why wasn't a claim brought by the parents on behalf of the children under the 4th Amendment. It just seems to me, you're going to argue about whether the due process law is clear, but the 4th Amendment law is certainly more clear to me at least than the due process law. So was there a desire not to have the kids involved in the case or what was At the present time, your honor, the children are quite young. One was a baby and we didn't want to bring them into the suit until we see how the parents' suit could move on. I mean, the parents bring it on their behalf. They could, your honor. I think they have to. I mean, a kid can't bring this. But your honor, we believe that under Gates, Gates specifically allows this because Gates does say that the parents' rights are a mirror image of the children, which means to me, your honor, that the children would have a 14th and 4th Amendment right based on 4th Amendment case law, and the parents have the 14th Amendment based on the controlling case law also. So therefore, your honors, When I look at Gates, it does say that if there are exigent circumstances, if there is a court order that would comply with the 4th Amendment, then it says then that also But to me, that doesn't automatically mean the opposite, that if you don't have exigent circumstances or a court order, then you automatically have a procedural due process violation. Do you see any 5th Circuit cases saying that without looking at whether there was a hearing in the typical sort of procedural due process? Well, as I remember from Gates, your honor, Gates basically talked about issues with the 9th Circuit cases, 2nd, 9th, and 11th Circuits, where they said that the procedures are the same, and in Gates, Gates also said that we see no reason to deviate what these circuits have ruled, and with respect to the establishment of law, Gates does say that a right is clearly established if the contours are sufficient so that the social workers or police officers would know that they are violating a right, and I believe, your honor, In the Gates case, they found it was, I believe that there was reasonable cause to believe there was danger to the children. So what cases have held the opposite, have found a due process violation when there was a pending domestic violence investigation? Well, if I can clarify, on the domestic violence, that was 5, 6 months before it was unfounded, and the social workers basically told the father he had to leave the house, and that created additional financial stresses on the parents. And then later on, after the children were taken, they were taken purely because, your honor, there was a small apartment and it was cluttered. When they went to the state court the next day, the presiding judge said, you had plenty of time to apply for an order. And had you applied for that order, you wouldn't have received it. So we're here today because they violated their own procedures. And it's that hearing, I mean, because Gates also says if you have the hearing within a day, which they did here, it indicates that that's part of the due process calculation. Are you bringing procedural due process, substantive due process, or both? Both. But, your honor, it's very important. When you, when parents have seven children and one's a baby, and all of a sudden, all seven children are taken, and all of a sudden they're in foster homes all over Texas, and then that's shock. That's shock to the parents. And the next day, they go to court, and the judge said, return those children immediately. Assuming you are bringing both procedural due process and substantive due process 14th Amendment claims. Yes, sir. It seems like an array of arguments that they're making in response is, well, it doesn't apply to social workers, number one. But if it does apply to social workers, it doesn't apply to a temporary seizure, as opposed to a three-year termination of parental rights. So that's their second sort of related argument. And the third one is more of a constitutional argument that all of Gates and the 14th Amendment really collapses just back into the Fourth Amendment, which you didn't allege. Do you want to take on one or three of those arguments? Well, with respect to, I believe Gates, when Gates said that they see no reason to deviate from the other circuits, I believe... That pulls the two apart, procedural due process at least. Right. Okay. And we don't have to worry about the 24 hours, because they were taken in violation right. Now, if I may say this, Your Honor, in Gates, Gates also, there was an issue on Gates where the social workers, I believe, said they had to investigate allegations within 24 hours. And the court said, even though you have to investigate allegations within 24 hours, that does not give you a right to violate somebody's constitutional rights. That's in Gates. And I think that's pretty important for this case, Your Honor. With respect to the other issue, I'm sorry, what was the second issue, Your Honor? Well, maybe you're trying to answer it there. If one looks at Sentowski, 35 years ago, and then you look at Gates, those did factually happen to involve prolonged removals. Correct. But the law hasn't evolved since then, even with Gates, because Gates even said in Gates that the court was not pleased with how the social workers operated in that fashion. Then they said, but we've established a right now. So Gates tried to put the social workers on notice that you can't take a child or children without exigent circumstances, a court order, or parental consent. Any interference at all, regardless of time? I believe so, Your Honor, yes. The district court focused more on substantive due process, sort of locating it, especially just the analysis that seemed to be all that the district court did was Dearborn. And the district court just said, I'm looking at what you've alleged, and that's in that nebulous middle, and therefore qualified immunity. Oh, if I may talk about the middle. I know the court did say it was in the middle. The middle would occur, in my opinion, and I think in all case law, if there was some child abuse, child endangerment. But here we have a small apartment, and due to financial issues caused by CPS, which puts it way out to the end of the continuum. In that particular case, the state's interest should be negligible. Now I will agree, if it was in the middle of the continuum, we would be in that vague area with family integrity, familial association. So factually, which case of ours is this closest to, that found a violation of due process? I think Wernicke also, Your Honor, if you go to Wernicke, Wernicke had a similar situation. Wernicke had a similar situation, and similar situation, only it was worse. There were syringes all over, there was potential abuse, potential child abuse, and the court looked at both claims. But then they said, we're not going to rule on the 14th Amendment claim because we want to send it back to the district court for further development. So they did not rule on the 14th Amendment claim of the parents. But in this particular case, they did find there was no exigent circumstances, even though the situation was worse than in the Romeros. For me, the trickiest part of this case is the police officers, for several reasons. To me, the allegations were pretty conclusory as to their participation, whether they were integrally involved or if they just sort of automatically accompanied social workers, and it's reasonable for them to rely on a social worker that said, hey, I was here the day before, and I've got an endangerment concern, and I just need you to come with me. If I may address that, there is a Texas Family Code, which I addressed in the appeal, which says that a police officer or social worker is not supposed to take a child unless he has personal, he or she has personal knowledge. He's not supposed to, but what, do you have, I mean, the district court sort of asked you this or wrote it in the opinion. What's the case that strips police officers of qualified immunity when they're accompanying a social worker who's the one with the notice of removal? Do you have a case? Well, based on, well, in this particular case, they, the officers threatened the moment that... I know that, but just do we have any case that simply has that fact scenario, the officers accompanying a social worker? I know you've alleged they spoke to Ms. Brown and she said, I've got no, I've got no reason to do this, essentially, but even assuming that, I guess I'm just wondering, do you see a case anywhere where the role of the police was to accompany a social worker and yet they aren't given qualified immunity for the removal, however violative it was by Ms. Brown? Not with social, not with social workers per se, but in Malia versus Spears, uh, Fifth Circuit case, an officer who went to the door and stood armed at the door while others performed an unconstitutional search that they knew was unconstitutional is not a bystander. I think that, that gives liability to the police. And also Creamer versus Porter, officer who read the warrant and was aware that the search exceeded the warrant's limited scope, but failed to act, was not a bystander. We believe that the police officers should not have threatened a mother, either release the children to CPS or you're going to jail. We feel that's an integral part of the, uh, of the argument that they are liable, Your Honor. Can you tell me why is, forgetting the case law for a second, I don't see why the Fourth Amendment's protecting unlawful seizures. Procedural due process. Because normally, and the Supreme Court has emphasized this recently, different constitutional provisions protect different interests. And that sort of makes sense. Why, why, why do something that's duplicative? Um, and the Fourth Amendment's protecting unlawful seizures. Procedural due process is usually you look at a, a balancing test of the process that's given, um, based on the interest of the individual and the, the burden on the government. So, so why should it just be a matter of whether there's exigent circumstances or a court order      I don't know. I don't know. I don't know. I don't know. I don't know. I'd like to know why the Fourth Amendment is not protecting unlawful seizures.    When does it, your Honor, when does it violate that sufficient procedural due process? Because, because that would give, with the 24 hour rule, that would give social workers the right to violate somebody's rights. No, because it would violate the Fourth Amendment. Fourth Amendment. It just wouldn't be a matter of procedural due process. It would be unconstitutional. So why, why does it just, why have this duplicative right? That just, it's very unusual, and it seems to me it's what the Supreme Court has, has emphasized we shouldn't do. Okay. Any questions? No. It would be unconstitutional under the Fourth Amendment. They couldn't do it. Correct. But it seems to me it's a different question about how the process worked out. Well, I, I still believe, your Honor, that the parents still have that independent right using Fourth Amendment standards. I, I believe that because based on the Ninth Circuit, the, also the Tenth Circuit, and Gates did say, we, we see no reason to deviate what the other circuits have said. But you agree there's, there's no other area where the, the Fourteenth Amendment due process turns on a Fourth Amendment analysis? Not that I know of, no. Except in this case, yes. Now, with respect to the supervisor, we feel that, as said, you didn't complain that she was aware of the facts and she approved the seizure of the children. So we believe, and that was, we believe that's indifferent. She knew there was a small apartment, financial issues with the, with the parents, and they could have did at least alternative means. They could have helped them out rather than seizing the children. So we feel that the, the supervisor has liability based on deliberate indifference. Now, if I may say, with respect to the, the establishment of a right, if we go to Wernicke, Wernicke said that a right is established if fair warning is given to the individuals and prior decisions give reasonable warnings. I think in this case, Gates was the case that gave the reasonable warnings. You can't take a child under these, under the three circumstances. And also in Kips, the court said a constitutional interest in familiar association exists. Now, if I may also say this, Your Honor, the, the AG brought up a case, Escondido, concerning these, a special, the Supreme Court said you need a special right, a special, it had to be very specifically allocated. We don't believe that would apply here because, you know, in any excessive force cases, if you have two cases and you change one fact, just one, this could be yes and this could be no. And just like with tasering, a lot of cases in the Fifth Circuit, a lot of times you're allowed one free taser. But in this case, there was a clear violation of the parents' rights, and they should have the right to bring that action against the social workers, bearing in mind that the children still have that right in the future.  Thank you, Your Honor. Thank you, Your Honor. We'll hear from Mr. Koonin. May it please the Court, Ari Koonin for the Child Welfare officials. The substantive due process interest that the parents are relying on is nebulous and under the current state of law and under the circumstances alleged, does not rise to the level of a substantive due process violation and cannot overcome qualified immunity. And there are three points that I'd like to really focus on in response to my opponent's argument. The first thing is that based on the pleadings and the argument that we just heard, there's really no dispute that there were at least some issues about the home environment that the social worker observed when she was carrying out her official duties and showed up at the house and did this investigation. And we're arguing, we've heard argument about how exigent those circumstances are, but that doesn't mean that addressing admitted issues about the home environment is arbitrary or egregious and not the type of violation that substantive due process is intended to cover, that sort of worst of the worst governmental misconduct, intrusion, that behavior that shocks the conscience, which is not a standard that the parents had tried to show. And you combine that with this brief one-day duration of the removal, means that substantive due process is going to be a very hard standard for the parents to overcome, particularly in the qualified immunity posture, where courts like the district court here are judging that claim on a continuum. And if there's some state interest in a brief temporary removal, there's no liability. The second thing that I want to highlight. Let me ask about qualified immunity. It seems, I don't know if you can see this, but it seems pretty clear that the complaint does allege a Fourth Amendment violation, if nothing more. And so if the officers, you know, qualified immunity is all about the law giving constructive notice to government officials. If the child welfare officials should have known it was unlawful, unconstitutional because of the Fourth Amendment, why should they get any qualified immunity protection? I mean, you say it's because the qualified immunity is on a claim-by-claim basis. What's your best case saying that? If I could answer that in a couple parts, I think that claim-by-claim analysis, just the authorities that we cite, some of those authorities in our 28-J letter, but also just conceptually, the Fourth Amendment right is distinct from the Fourteenth Amendment right. The Fourth Amendment right covers a personal liberty interest violation in the seizure of the person that is personal to the person being seized. The Fourteenth Amendment right of the parents is a more nebulous concept, and it sweeps in sort of a bundle of interests. And they haven't been really well-defined, but they are different. Well, I understand that distinction you're making. But I guess my question is, if the official should know it's unconstitutional because of the Fourth Amendment, why give protection to what is unconstitutional they should know is unconstitutional activity just because of the specific claim the other side decides to bring? Well, I would want to start by clarifying that it's possible that allegations like the ones the plaintiffs have brought might raise a Gates violation, but I can't limit the State to a position on that because the reasonableness under the Fourth Amendment is, you know, it's based on the seizure under all the circumstances, and at this stage we don't yet have all the circumstances developed. Putting that aside, the reasonableness of the removal under the Fourth Amendment, you know, it governs that specific type of personal liberty interest that is different and wouldn't necessarily put you on notice that you were, as a social worker, investigating in this ongoing investigation that involves domestic abuse, you're making personal observations of the home environment. You wouldn't be on notice, A, that you weren't serving a State interest by doing so, and B, that the very short duration of the removal, so that the kids can then be brought in front of a judge who can test the basis, it would violate. How would a social worker not know after Sandowski and Gates that our Court has been clear that we agree with the various circuits that say we equate the analysis with the Fourth Amendment with a procedural due process argument? So put aside Dearborn, substantive due process. How do you not read Gates to put her on notice that there would be a procedural due process violation? I think as the Court alluded to in the opening in discussing with my opponent, that just because the process under the Fourth Amendment where a seizure complies with the Fourth Amendment would satisfy the separate Fourteenth Amendment interest doesn't mean that it's necessary to do so. And there's reason to think that you wouldn't be on notice just because there's arguably some Fourth Amendment violation. Again, because the interests are different, the Fourth Amendment right is a different right than that Fourteenth Amendment right. That Fourteenth Amendment right is — let me step back. The Fourth Amendment right, the reasonableness of the seizure, whether there's exigency, I mean, it's essentially like that's when you can remove the children with no process. I'm asking you maybe the opposite. Put the Fourth Amendment aside. It hasn't been alleged here. They've disclaimed it. I'm just looking at Supreme Court and Fifth Circuit law, and I'm wondering if you interpret that body of law that seems quite clear to me to not apply, and if so, why? Put the Fourth Amendment and that displacement theory completely aside. I thought your brief was saying, well, that body of law only applies to prolonged removals. Under the current state of the law, that is right. The body of law about substantive due process is about prolonged removals. And I think as Morris v. Dearborn discusses that when you've got a temporary removal, especially one that's this short and is followed up by a hearing, that's not going to rise to the level of a substantive due process violation. And we're, again, in this qualified immunity posture. Well, in Dearborn, what we said was three years is not even close to the line. I'm sure you remember the exact quote. Not even close to the line that allows temporary removals. And how did we finish the sentence? That allows temporary removals when there is an ongoing child abuse investigation. And that's what we have here. There's an ongoing investigation. Into child abuse?  I thought the allegations here were that Mr. Cruz had been removed. There was no danger at all. He wasn't even in the house. Well, Mr. Cruz was not in the house. But that doesn't negate the fact that there was an ongoing domestic violence investigation. But I thought, again, just be as precise as you can as to the allegations. The allegation of violence was from parent to parent, if true. Is there any hint, scintilla anywhere, of any risk to the child, abuse of the child? That's just a yes or no question. I can't answer that on the pleadings at this stage. And, again, we're at a motion-to-dismiss qualified immunity stage where it would essentially be the plaintiff's burden to bring the case. What is the authority that says that the state's interest in investigating and making sure that children are okay and safe and properly cared for is torpedoed just because there is a difference of opinion about what the parents observed and what the social worker observed? The plaintiffs haven't cited that case. I'm certainly not aware of anything holding that. There is, as far as I can tell, no precedent of this court holding that a removal that is of this short a duration. Well, when you keep saying that, what's the case that stands for the fact you can sort of interfere just for a short period of time, just not up to three? You put a spin on Sandowski, but Sandowski talks about not just custody. It talks about care and management. And it's very clear that the case law it's endorsing and relies on, it being the Supreme Court, is no interference with the ongoing family relation. It doesn't say that there's some three-year limit, which creates the 14th Amendment violation. What's your best circuit authority that short removals from ongoing family care and management don't violate, but at some point they become too intrusive by the state into the family? What's your best circuit authority for that position? It's not just mine. It's one that the ---- No, I'm asking you the best circuit case that asserts that interpretation of Sandowski. What's the best circuit case? Your Honor, you can look directly to this case. It's Sutherland. It's out of the Second Circuit. It's cited in the plaintiff's brief. And that case holds that as a matter of substantive due process, there is no violation for this sort of brief removal doctrine. We talk about that brief removal when it's followed up by that hearing. And in that case, that hearing happened four days later. We are well short of that. You know, so it isn't a case you cited in your brief? Pardon? Is it a case only they cited? No, it's just in that brief removal doctrine. Okay. So you cited it. And when I look at it, is it not going to involve an allegation of child abuse? My guess is it will. I think the circumstances are more similar to what the plaintiffs allege. And there is a social worker who — Okay. Noah, it was parental violence to each other, not, and still the children are taken and the Second Circuit says qualified immunity. That's essentially what the framework is going to say? It didn't just say qualified immunity. It said no substantive due process violation at all. Okay. But putting all that aside, I think the way that the Court looks at these substantive due process violations is essentially it's a function of is there some State interest in being involved in the family relationship at all? And is there a temporary removal? There is some State interest here. There is a very short removal. There is qualified immunity under that continuum approach, at least under the current state of law as it is now. The parents are essentially asking the Court to make new law and set new boundaries for substantive due process. Which is our case that said clutter and syringes don't give enough? Which is that? Is that Warnecke or Woolley? As a matter of the Fourth Amendment, I think you could look at Warnecke. That's the case? You could look at Warnecke to say the thing about clutter. How is there a higher State interest here than there was there? Well, we are talking about a social worker carrying out official duties. We can argue about whether it's exigent or not. But for substantive due process, you would expect to see something like there were no circumstances that needed correction. That's not what we have here. The plaintiffs don't dispute, for example, when they said that there were financial stresses, small, cluttered apartment. It's all based on the personal observations of a social worker. She's doing her job. She's there in the course of an ongoing investigation. The plaintiffs haven't come forward with any Supreme Court authority, directly controlling authority from this Court or anything close to a consensus of authorities from any other circuit that says that when a social worker walks into that environment that the State just has no interest in making sure that the home conditions are corrected. You would expect for a substantive due process violation a case where, you know, it's alleged to be something more extreme of an intrusion, where there's no State interest at all, whether exigent or not, or you'd at least expect a longer duration of the removal. We don't have that here. That's why there's no liability, no qualified immunity for Ms. Brown and Mouton. That's why the Court should affirm. Thank you. MR. HIGGINSON. Mr. – I was going to say Higginson, but it's not quite Higginson. Higginson. MR. ROBERTSON. Yes, Your Honor, and I've spent my whole life spelling my name every time I introduce myself. MR. HIGGINSON. Robert Higginson. It's H-I-G-G-A-S-O-N. That's exactly right because they want to call me Higginson. MR. ROBERTSON. You're a close affinity, aren't you? MR. HIGGINSON. Well, I won't object to that, Your Honor. MR. ROBERTSON. Okay. MR. HIGGINSON. May it please the Court, I'm Robert Higginson with an A, and I represent Sergeant Rees and Officer Benefides. I had told Mr. Koonin that I would just get up here and say what he said because some of his argument applies to the officers, but I realize, of course, upon this very thorough, thorough colloquy that it gets off into issues that the officers don't even need to address, and that is about whether there was an exigent circumstance, whether it was reasonable or not for the social workers to take the actions they did, although I would agree with Mr. Koonin that the social workers are protected. I don't need to argue that because the officers are because they're even further removed from the social workers, and even if there were no qualified immunity for the social workers, the officers do have qualified immunity because once you plead it, you have it until the plaintiff shows that you don't. It's the plaintiff's burden to overcome that. The officers never have to prove their entitlement to qualified immunity. It's just something pleaded, and it flips the standard. MR. ROBERTSON. The only paragraphs, is it paragraph 66 and 67 as to your claims? MR. KOONIN. Yes, those are the ones. MR. ROBERTSON. What they plead, though, is, well, the two officers actually spoke to Ms. Brown, and they confirmed there was no exigency. MR. KOONIN. Even if that's true, and we'll assume that that's true for purposes of evaluating the pleading. Confirming that there's no exigent circumstance to the social worker is still not enough to have qualified immunity because the social workers are going forward. The officers are there to ensure the safety of the children, the parents, any bystanders. There are occasions when people see something happening, and there's a crowd, and they get involved. You can't have something like that here. And so the officers are there to make sure that this is a safe situation, that this removal, whether it's right or not, whether it's lawful or not, that no one's going to get injured. And so there's nothing pleaded that overcomes their entitlement to qualified immunity.  ROBERTSON. That argument has coherence to me, but what's the best case that establishes it? You're not saying they were bystanders unaware.  KOONIN. No. MR. ROBERTSON. You're accepting the allegation that they actually knew everything, and yet still, at the dismissal stage, qualified immunity applies. MR. KOONIN. Yes. MR. ROBERTSON. Do you have a case that sort of explores that? Only because I would think if they know that no court order, no exigency, no parental consent, it seems like they're right there in with Ms. Brown. KOONIN. Assuming that that's all true, if their role is to ensure that there is no harm in this encounter, then it doesn't really matter about the rest of that because that gets settled in court the next day. And so they're not saying, let's take these kids away. Yes, I agree with you. Let's remove these children and violate someone's rights. Instead, it's like, well, you're doing this, and I want to make sure nobody gets hurt in  MR. ROBERTSON. Is Wooley the case that's just police walking in, taking the child? Is it Wooley? Wooley? Is that the case? MR.  I'm not certain of that. That sounds right. I'd have to look and see. MR. ROBERTSON. Well, let's assume Ms. Brown weren't there, and this was the police, and they knew there were no exigent circumstances.  ROBERTSON. If there were no social workers there? MR. ROBERTSON. Yeah, no social workers. They just go in. MR.  That would be a tricky case. That would be a different situation. MR. ROBERTSON. Isn't that Ms. Brown's situation? MR. ROBERTSON.  MR.  No, not Ms. Mouton. MR. ROBERTSON. Oh, I'm sorry. MR. ROBERTSON. Ms. Brown. MR. ROBERTSON. Ms. Brown.  ROBERTSON. Is it her situation? If she's not there, but she... MR. ROBERTSON. Well, if there's no evidence of child abuse. Imminent danger to the child. MR. ROBERTSON. Okay. I don't know how far I can arrange with this, Your Honor. Before I became a lawyer, I was a social worker for a while, and there are... if there's domestic violence, and it's between the spouses, and even if one of them is out of the home, that doesn't mean that the children are safe. Sometimes the spouse will come back and kill people. All right? Now, I don't know what it was in Ms. Brown's observation or her thought processes that said, this is something we need to investigate. There have been a history of domestic violence, at least two allegations. We don't know if they were substantiated or not, but there's some basis for that. And so I wouldn't distinguish that cleanly and neatly between violence between parents and children who might get hurt in the process, in the way. If an enraged man, for example, picks up an end table and throws it across the room at his wife, and there are seven children in this small space this big, the chances that one of them gets hurt is pretty high. This is something... MR. BROOKS Yes, that's right. Six-year-old, I believe, at the time. But again, the officers were there to ensure the safety of everyone, and there's nothing pleaded that overcomes their entitlement to a qualified immunity, given their role of making sure that whatever this is, even if it's wrong, nobody's going to get hurt here in this. MR. BARROWS That would be a strong proposition for us to put in writing. In other words, no matter how wrong and how violated of the Constitution and how aware the police, if they're there just to accompany a social worker, they will always get qualified  MR. BROOKS Well, if it were slapping them in the face that this social worker doesn't have any grounds for doing this, and I don't think that's the case, they have this notice of removal. MR. BARROWS Yes, okay. That's what it turns on. MR. BROOKS Yes. MR. BARROWS Slap the face, no, but notice, yeah. MR. BROOKS Yes. MR. BARROWS The notice of removal is something that the officers were working, relying on. And so, if the... MR. BROOKS You've worked in this area. What is that, just as an officer of the court? What is the notice of removal? Does that mean she has shown them something she gets elsewhere? MR. BARROWS I wish I knew, Your Honor. MR. BROOKS No, you don't. MR. BARROWS This is not an area that I, I mean, I work in qualified immunity, yes, I work in civil rights cases, but I haven't dealt with this exact thing before. MR. BROOKS But it's a document. MR. BARROWS Yes. I take it to be, yes. I take it to be a notice of removal. And officers can still, or are still, or they can still be protected, even if they make mistakes of law, if those are reasonable mistakes, and mistakes of fact, if those are reasonable mistakes, and they are allowed to rely on other sources of information, other officers, or even, say, a confidential informant. Now I'm just saying this is roughly analogous to what we have here in them relying on a notice of removal from a state official, the social worker. We had a case here in this court last year where we had our officers, Houston police officers, in fact, that I represented, serve a search warrant on the wrong address, and this court upheld the dismissal. There was a mistake based on a confidential informant's, his mistake, and it filtered all the way through an affidavit, and a search warrant, and they executed it, and the Supreme Court denied service last year. MR. LANDRIEU I apologize. I apologize. I was so engaged with my almost-cousin here. Thank you, Your Honor.  COOPER Mr. Rose. MR. ROSE Thank you, Your Honor. Your Honor, I think it's very important to understand here, there was no child abuse or no child endangerment. We're talking about an incident that was five months prior, and even the state court judge said it was unfounded, and he, she ordered that the husband returned to the house because there was no probable cause to even remove him from the house, and I think that's very important. Now, with respect to the police officers, in Gates, Gates cut the, quote-unquote, they cut the officers some slack because they knew there was continual involvement with the Gates family, and they felt they had some sort of knowledge. Here, the police officers just threatened the mother, saying, if you don't turn over the kids, you're going to jail, and again, we believe they were integral participants and should not have qualified immunity. And also, with all these state actors, there was no reasonable mistake. The case is clear, and if we go back- MR. BRAUN Do you know what a notice of removal is? MR. ROSE I'm sorry? MR. BRAUN Do you know what a notice of removal is? Ms. Brown had a document, notice of removal. MR. ROSE Yes. MR. BRAUN What is that form? MR. ROSE Okay. The, she wanted, I, that is a form where they give to the parent, we're taking your children. I believe my client did not sign it because she didn't agree to her children being removed.  BRAUN But I guess then the argument is the police officers really have no expertise to assess that social worker form. They would think, well, it's, there's been a determination of endangerment, Ms. Brown came the day before, we weren't there, she concluded something, she actually then ran it up her supervisor, she got the document. MR. ROSE Well, at this point in the litigation, we don't know, but as we allege, we believe the, the, the police officers knew there was no exigent circumstances. So I think that's why, hopefully, Your Honor, this will get reversed and we can proceed to trial on this and get all the facts. MR. BRAUN Back on Ms. Brown, as I understand Texas's argument, they're saying that, um, given the state of the law, Gates and Dearborn, um, there isn't a 14th Amendment violation when the following occurs. First, there's some anxiety, parental disharmony, plus a very brief removal that leading to a hearing the next day. And they're saying that that doesn't really trigger the law, the, the, the line, that essentially the discourse was right, this is the nebulous middle. We just don't have that constellation of facts. MR. TURNER If I may address that. I think we're way out, like I said before, on the continuum. But Gates does say that imminent danger of physical or sexual abuse if the person, the perpetrator, or if the children remain in the house. But he was never, he's outside the house. So the children could not be in imminent danger of, of bodily harm because even though this was unfounded, he was not living in the house. So there's your Fourth Amendment violation, Your Honor. And I believe still the 14th Amendment does help the parents here. Just like there was a recent... MR. TURNER I just believe that it helps. It's all you charged. It's, your only complaint is the 14th Amendment. MR. TURNER Well, the complaint is that they should have the right to bring an action for the removal of their children because it, it shocked their conscience, really, that seven children were removed, gone, including a baby. And that would give any parent, you know, like anxiety. What happened to my kids for no reason? So we feel that the social workers violated their rights and they, and it's not due to a mistake, not even a reasonable mistake, because next, they could have gone to court and asked for a warrant. And if the warrant was denied, like the judge said, they wouldn't have taken the kids. They did not even follow their own procedures, Your Honor. So I believe this case should be reversed and we can proceed on, further develop the  MR. TURNER Thank you, Counsel. MR.  MR. TURNER The next case we're hearing today is